## C. A. Chapman, Defendant in Error, v. George Hofmann, Plaintiff in Error.

## Gen. No. 15,769.

MUNICIPAL COURT—*when recovery may be had upon quantum meruit. Held,* that the statement of claim in this case was sufficient to justify a recovery upon a *quantum meruit.*

Error to the Municipal Court of Chicago; the HON. ROBERT H. SCOTT, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed October 5, 1911.

**Statement by the Court.** This writ of error is brought to reverse a judgement for the Municipal Court of Chicago in a case of the fourth class. The judgment was for $730.24. It was rendered in accordance with findings of the trial judge sitting without a jury. The plaintiff, a corporation, the defendant in error here, sued Hofmann, the defendant below and plaintiff in error here, stating its claim to be:

"For services as engineer rendered by C. A. Chapman to said defendant in the preparation of plans and specifications for the erection and equipment of a certain hydro-electric power plant and accessories, which said plans and specifications were prepared at the request and direction of said defendant in the fall of 1907; said services amounting to the sum of $741.34, together with interest thereon from November 20, A. D. 1907, which said claim was transferred and assigned to the plaintiff by said C. A. Chapman on, to-wit, De-

cember 1st, A. D. 1908, and said plaintiff is now the bona fide owner thereof."

The defendant based his defense below on two propositions; the first, that the plans and specifications prepared by Chapman were prepared by him under a specific contract that the same were not to be charged for unless they were used by the defendant, and that they were not used; and the second, that the plans and specifications were not in accordance with the contract between Chapman and the defendant, and that by reason of the changes made in the construction work at the direction and request of Chapman, the defendant expended a sum of money exceeding the claim of the plaintiff, which sum the defendant has the right to recoup in this suit.

In this court, however, under the assignments of error, it is only argued that the plaintiff below "failed to show by a requisite preponderance that the plans and specifications and work performed was done at the request and direction of the plaintiff in error, and that plaintiff in error agreed to pay for same," and "that the suit is based on a specific contract, and the burden was upon defendant in error" (the plaintiff below) "to establish said contract by a preponderance of the evidence, which it failed to do."

SAMUEL FRIEDLANDER, for plaintiff in error.

GALE BLOCKI, for defendant in error.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

We see no reason to disturb the finding of the court and the judgment in this case. There is no doubt in our minds, after a careful consideration of the stenographic report of the evidence adduced at the trial, that on or about September 10, 1907, the defendant Hofmann employed Chapman (the assignor of the

plaintiff) as an engineer to advise him and enable him to develop some water power on the Desplaines river, by means of which he apparently designed to light a proposed amusement park there. During a joint examination and consultation it became understood between Hofmann and Chapman that Chapman was to prepare plans and specifications for the plant and supervise the construction and installation thereof.

Numerous visits from Chapman and his employes to the place of operations, to determine by observation and expert examination what was necessary and practicable, followed; and a very considerable amount of work was done by Chapman and his office force in making drawings of plans for the power plant, and drafting specifications for a power house, electrical apparatus to be installed therein, and turbine water wheels in connection therewith.

Friction and dissatisfaction between Hofmann on the one hand and Chapman and the representative of the latter, one Bailey, on the other, soon developed, engendered apparently by differences of opinion between Hofmann and Bailey as to the desirability of certain parts of the proposed work or the method or promptness in accomplishing it, and confirmed by Hofmann's belief that Chapman himself was not personally giving the attention he ought to the undertaking. This culminated in an angry conversation over the telephone on November 18, 1907, between Hofmann and Chapman and the abrupt termination of the relations between them. Exactly what was respectively said by the parties in that conversation is in dispute between them. Chapman says that he told Hofmann that he wished to be relieved of any further responsibility in connection with the work, and that Hofmann replied that he would be very glad so to relieve him. ''I asked him,'' Chapman testified, ''what I should do with the papers and he said 'Send them to me.' I said 'All right, I will send them to you and send my bill.' He

said, 'All right, send your bill and I will pay it up and get rid of you.' "

Hofmann in his testimony denied that he promised in that conversation to pay a bill or said anything about a bill. He says that Chapman said to him, "If yon don't like my way of doing this work, get somebody else," and that he replied, "That is a fine way to leave me at this time. That is no way to do. Why don't you go out, if you have any suggestions or tell me why you have not been on the ground? Bailey doesn't know anything about it. He has made three changes. Now come out and show me why you have done it."

We should see no justification for disturbing the finding of the court below, in this version of the conversation, if we accepted it as the correct one.

Hofmann admitted in his testimony that he thought that Chapman had a bill against him and that he expected to pay Chapman for his time. Subsequently in his testimony, however, Hofmann supplemented this account of the conversation. He says: "I said, 'That is a funny way to leave a person just at this stage and the condition of the weather. If high water comes on it will flood all our work, everything that was in there.' Chapman said, 'Get somebody else,' and I said 'All right.' " And to this express acceptance of Chapman's withdrawal Hofmann added the implied one of receiving, without objection or comment, the package of drawings and specifications and immediately summoning another expert to advise him and, as he himself says, "to go on and finish the work." There is no reason, however, why the trial judge or we should accept Hofmann's account of this conversation, or other parts of his testimony, as more credible than Chapman's statements, where they are in conflict with them.

It was for the trial judge to choose between them. We cannot agree with counsel for defendant that his testimony is in itself more probable or that it is better corroborated than the plaintiff's. The documentary

evidence on the other evidence tends rather to bear out the plaintiff's credibility than the defendant's. Hofmann testified that he never ordered from Chapman any plans or specifications, and that he never knew any plans or specifications were in existence until he received them, and had never been told by Chapman that he was preparing plans and specifications, and that the only genesis of them was the statement of Chapman, after he had been taken the first time to the river, "There will be no harm in drawing up some sketches and blue prints, and if you" (Hofmann) "will use them, you can pay for them; if you don't use them and use somebody else's, all right." The inherent probability of all this does not seem to us great at best. It is lessened by the fact that Hofmann undoubtedly received from Chapman, without remonstrance, objection or comment, a letter dated September 25, 1907 (a few days after the date of this alleged conversation), in which Chapman, after discussing the flow of water and the estimated power, says:

"On this basis drawings are being prepared for the installation of a flume, forebay, tail race and building for the placing of the wheel and generator. * * * *In keeping with your directions drawings for the rack, head gates and flume are being prepared and will be ready within a few days.*

Should you desire that a dam be designed by me, kindly instruct me of your pleasure and the subject will be given immediate attention.

*Specifications are also prepared for a turbine wheel, necessary shafting, generator, etc.*

I trust my action in this connection will meet with your approval. * * * "
and also by the fact that on October 30, 1907, Hofmann signed an order to Chapman to deliver to a firm of architects, designating them as "Architects for the Improvements at Lyons," "Copies of all your drawings for the water power at the dam;" and by the fact

that under date of November 5, 1907, Chapman wrote
a letter to Hofmann which it is a fair presumption,
despite Hofmann's disclaimer, the latter received, that
Chapman had complied with this request; and finally
by the fact that on the termination of the relations be-
tween them and the reception of a letter from Chap-
man, in which he said that he was forwarding draw-
ings and specifications and added, "I am also includ-
ing my bill for services in this connection *as per your
direction* and trust that in keeping with your state-
ment, I may receive prompt remittance covering
same," Hofmann again made no comment of rejection
or denial to Chapman, but turned the package of pa-
pers over to his lawyer unopened.

Much emphasis is placed in the argument for the
plaintiff in error on the position that "the statement
of claim" and "concession of counsel" show the suit to
have been brought on "a specific contract," and that
a specific contract for a definite sum was not proven
by a preponderance of evidence. Therefore, it is
argued, the plaintiff must fail.

We do not consider the statement of claim as incon-
sistent with recovery on a *quantum meruit,* the "quan-
tum" being alleged to be $741.34. As for the "conces-
sion" of the plaintiff's counsel in the court below, noth-
ing was said by him misleading to the court or the de-
fendant. Whatever the precise language used, the in-
tent and meaning were plain enough. The claim was
for the proper compensation for the services perform-
ed by Mr. Chapman and his office force, and that pro-
per compensation was, according to the custom of the
business and the testimony offered, a percentage of the
estimated cost of the proposed plant.

The record does not show any satisfactory proof
that Chapman was incompetent, inefficient or unfaith-
ful. There was no sufficient reason shown for the ter-
mination of the relations between Chapman and Hof-
mann except the ill feeling that had grown up between

them. The amount recovered seems to be justified by the evidence as a reasonable and customary compensation for the services performed.

"The laborer is worthy of his hire," and in deciding the case "upon the merits as they appear from the * * * stenographic report * * * signed by the judge" (Municipal Court Act, sec. 27, par. 8), we have no hesitation in affirming the judgment.

*Affirmed.*